UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Roland Chretien

    v.                              Civil No. 07-cv-00044-JL
                                        Opinion No. 2008 DNH 175

N.H. State Prison, Warden


**O R D E R**

This case is before the court on Roland Chretien's (already granted) petition for a writ of habeas corpus from his sexual assault conviction in state superior court.  See 28 U.S.C. § 2254.  On April 21, 2008, this court ruled that, on the record before it, it was impossible to determine whether the superior court's refusal to allow Chretien to cross-examine the victim regarding an allegedly false accusation of sexual assault against another man had a substantial, injurious effect on the verdict. See Chretien v. New Hampshire State Prison, 2008 DNH 084, 25-26 ("the April 21 order").  Specifically, Chretien alleged that the victim had accused one Peter Hallinan of sexual assault under circumstances similar to those under which Chretien has been accused.  Noting that the trial court had not only denied the requested cross-examination regarding the allegedly false accusation, but had refused to allow a deposition or to hold a pretrial hearing (or similar proceeding) on the issue, see id. at

23-26; see also State v. Howard, 121 N.H. 53, 58-59 (1981) (requiring pretrial hearing prior to admitting evidence of alleged victim's prior sexual activity), this court utilized its authority under Rule 8 of the Rules Governing Habeas Corpus and scheduled an evidentiary hearing for July 8, 2008.

Although the hearing was scheduled at 10:00 a.m., the parties requested leave that morning to work together on a stipulated statement of facts.  In order to spare the victim the embarrassment and trauma associated with testifying to potentially intimate matters in open court, the court continued the hearing throughout the day to enable the parties to craft the stipulation while the Warden's counsel questioned the victim privately.

During the afternoon, the parties submitted to the court a stipulation which, read in the context of all the evidence heretofore presented,[1] established that:

>    (a) contrary to what was represented to the trial court, the alleged sexual encounter with Peter Hallinan had in fact taken place;
>
>    (b) the encounter was consensual;

---

[1] For the factual evidence presented at trial and the procedural history up to the habeas petition, see the April 21 order, 2008 DNH 084, 3-9.

    (c) the Hallinan encounter involved precisely the same type of sexual activity of which Chretien was accused (fellatio);

    (d) the Hallinan encounter, likewise, involved sex with a man previously unknown to the victim;[2]

    (e) the Hallinan encounter, likewise, involved sexual activity in a semi-public setting (an out-of-the-way area of a commercial establishment);

    (f) immediately after the Hallinan encounter, the victim had falsely reported to her son, Tim Hoyt, and his roommate, William Kirsch (with whom she had been engaged in a sexual relationship), that Hallinan had sexually assaulted her;

    (g) the victim told Hoyt that Hallinan had choked her during the assault (just as she had accused Chretien of doing);[3]

    (h) the sources of the early morning phone calls to Hallinan--implicitly accusing him of sexual assault, and attempting to verify the victim's false accusation that Hallinan had "choked her" to force her to perform fellatio--were Hoyt and Kirsch. Later in the day Hallinan called back and spoke to Kirsch, who gave him the impression that the victim has "changed her story" and there would be no charges pressed;

---

[2] Prior to the incident underlying the charges against Chretien, the victim had briefly met him at a restaurant in Massachusetts. Her husband--whose friend had purchased a motorcycle at Chretien's store--had introduced them.

[3] Per the stipulation presented at the July 8 hearing, the victim stated that "she told her son that Peter Hallinan had choked her because she did not want her son to think she was a slut." Similarly, at Chretien's trial, the victim testified that he "grabbed me, well, just around my neck and he pushed me down to my knees," and that she "felt that he was choking me."

     (i) the Hallinan encounter occurred immediately after Kirsch had declined the victim's invitation to go to a motel with her;

     (j) earlier in the evening, the victim's husband had confronted Kirsch and the victim regarding their sexual relationship, which they admitted;

     (k) the trial court's finding that the victim had denied that the Hallinan sexual encounter took place--which at least partially formed the basis of its denial of Chretien's request to cross-examine her about the false accusation, as well as his request for a new trial--was based on false information.  It is not clear what the basis for this finding was; and

     (l) when questioned on the morning of the July 8 hearing, the victim initially denied that the Hallinan encounter had taken place, and that she had falsely accused Hallinan of sexual assault.  Upon further questioning, however, the victim admitted that she had falsely accused Hallinan of choking her, after consensually performing fellatio on him, "because she did not want her son to think she was a slut."

At the July 8 hearing, this court announced from the bench that it planned to grant Chretien's habeas petition, vacating his conviction without prejudice to re-trying him, as well as the factual grounds for that decision (the legal standards underlying which were set forth in the April 21 order, <u>see</u> 2008 DNH 084, at 15-25).  It also asked the Warden to offer any arguments it had that the petition should not be granted despite the denial of Chretien's right to cross-examine the victim about her admittedly false accusation against Hallinan at trial.  The Warden offered three such arguments: (1) that defense counsel at Chretien's

trial had not made a sufficient pretrial showing to justify the requested cross-examination, (2) that a false accusation subsequent--as opposed to prior--to the accusation leading to the charge against a defendant is irrelevant as a matter of law, and (3) harmless error.[4]  The court rejected each of these arguments.

At the end of the hearing, the court expressed concern that a written order memorializing its findings and ruling, and specifically the victim's admissions as listed above, might cause her unnecessary embarrassment and trauma, and noted that if the state declined to re-try Chretien, it would not be necessary for the court to publicize those facts in a written order.  The Warden's counsel agreed to consult with the necessary decision makers in his office to determine whether Chretien would be retried.  Immediately following the hearing, and based on the Warden's counsel's agreement, the court issued an order consistent with that approach:

> The petition for a writ of habeas corpus is GRANTED.  A memorandum opinion will issue within 30 days from the date of this order, <u>before which the [Warden's counsel] will notify the court of the State's intentions with respect to the disposition of the criminal case</u>.  The judgment of

---

[4] The Warden also asked this court to "remand" the matter to the superior court for a harmless error determination, which this court rejected because this is a collateral habeas proceeding, not an appeal.

> conviction is VACATED without prejudice to a new trial.

("the July 8 order") (Document No. 29).  Some weeks after the hearing and order, an appellate attorney from the Warden's counsel's office inexplicably telephoned the clerk, asking when he could expect this court's order on the writ of habeas corpus. Perplexed, the clerk referred the appellate attorney to the court's July 8 order, requiring the Warden's counsel to notify the court of the State's plans for the case before the court would issue any written order.

On July 29, 2008, the clerk received a letter from the Warden's counsel, informing the court that the Warden was considering an appeal, and that "the final decision on whether or not to appeal this order cannot be made until after the district court issues its memorandum opinion."  Further, in apparent defiance of the court's July 8 order--in which the Warden's counsel had acquiesced--the letter stated that "a final decision as to whether or not to re-try the petitioner cannot be made until after a decision had been made as to whether or not to appeal the district court's order."  (Document No. 30).

Assuming that the Warden's counsel's conduct was based on a misunderstanding, the court held a conference call with counsel on August 1.  During the call, the court reminded counsel that:

6

(1) it had suspended its decision on issuing a written order out of deference to the victim in order to avoid the anxiety and possible embarrassment attendant to her admissions, the stipulation, and the court's factual findings, (2) he, the Warden's counsel, had agreed to that approach, and (3) the legal basis for granting the writ of habeas corpus was fully set forth in the April 21 order--a 26-page opinion partially granting and partially denying the Warden's motion for summary judgment.  The only additional developments, the court explained, were purely factual:  based on the parties' stipulation, the court had determined that the victim did, in fact, falsely accuse Hallinan of sexual assault under circumstances similar to those resulting in Chretien's conviction, and that the superior court had been incorrectly led to believe that the Hallinan encounter had never occurred.  Thus, in order to determine with certainty that the Warden and counsel desired a full-blown exposition of these factual findings, the parties agreed that the Warden's counsel would report back to the court about whether the appeal would be restricted to legal rulings, or would also include the court's factual findings.[5]

---

[5] Having agreed to proceed on stipulated facts at the July 8 hearing, both the court and Chretien's counsel were concerned that the Warden might take a different view of certain facts established at the hearing, upon which both parties and the court

On August 8, 2008, the Warden's counsel wrote to the court that the Warden was "considering an appeal . . . on legal grounds," and that "it is not anticipated that the appeal will be based upon the Court's factual findings," but that "the exact grounds for any appeal will not be determined until after the Court issues its memorandum opinion and judgment is entered." Fully exasperated, the court will now turn to the applicable law.

**ANALYSIS**

In its April 21 order, the court limited the July 8 hearing to resolving the following issues:

> (1) the breadth of the cross-examination, if any, relating to the allegedly false accusation that should have been allowed under Rule 403;
>
> (2) whether, under White [v. Coplan, 399 F.3d 18 (1st Cir. 2005)], it can be shown that the prior accusation, if it occurred, was demonstrably false; and
>
> (3) whether, if the hearing established that preserved constitutional error occurred, the error had a "substantial, injurious effect" on the court's verdict, or merely constituted harmless error.

---

relied in proceeding on the basis of the stipulation alone, in lieu of the testimony from witnesses who had appeared and were ready to testify.

2008 DNH 084, at 26. As explained in that order, resolution of these issues would not require any inquiry into the admissibility of evidence of prior sexual conduct implicating the New Hampshire rape shield law. See Michigan v. Lucas, 500 U.S. 145, 149 (1991); see also N.H. Rev. Stat. Ann. § 632-A:6; N.H. R. Evid. 412; Cf. Redmond v. Kingston, 240 F.3d 590, 592 (7th Cir. 2001) (Wisconsin rape shield statue bars evidence of sexual conduct, not false charges of sexual assault). That question was resolved when this court rejected Chretien's extrinsic-evidence-based claims. See April 21 order, 2008 DNH 084, at 14. Rather, the remaining issues related strictly to Chretien's right to cross-examination under the Confrontation Clause of the Sixth Amendment.

Under New Hampshire Rule of Evidence 608(b), and the applicable case law, the defendant in a sexual assault case may, in the discretion of the court, generally cross-examine the alleged victim about specific instances of conduct probative of untruthfulness, i.e., a prior false accusation of sexual assault. See N.H. R. Evid. 608(b); White, 399 F.3d at 24. While the court may exclude this evidence as unfairly prejudicial or out of other concerns referenced in Rule 403, the more successful the defendant is in establishing the falsity of the prior accusation, and the more similar it is to the underlying charged offense, the

less discretion the court has in choosing to exclude it.  See White, 399 F.3d at 25-27; Ellsworth v. Warden, 333 F.3d 1, 5 (1st Cir. 2003) (en banc) ("strong evidence of a prior false accusation," at least if "the setting and type of alleged lie are similar" to the charged offense, would be "very powerful").  As the First Circuit has made clear:

> If the witness were prepared to admit on the stand that a prior accusation of similar nature was false, it is hard to imagine good reason for excluding the evidence.  Prior admitted lies of the same kind in similar circumstances could powerfully discredit the witness.  No time-consuming excursion beyond the witness would be required.  Further, the accusation being conceded to be untrue, inquiry would not require the witness to admit to prior sexual activity or assault.
>
> The difficulties arise when it is assumed that the witness will make no such admission of past lies.

White, 399 F.3d at 25.

Here, there are no such difficulties; the victim has acknowledged not only that she falsely accused Hallinan of sexual assault--under circumstances similar to those she has alleged against Chretien--but provided the court with her motive for doing so--to avoid her son's disdain.  Her accusation against Hallinan, which is not just demonstrably false, but admittedly so, arguably "suggests a pattern, and a pattern suggests an

underlying motive," i.e., to characterize a consensual sexual encounter as assault to avoid the scorn of one's family.  Id.

The Warden argues that, because Chretien made an insufficient showing to the superior court that the victim had, in fact, falsely accused Hallinan of sexual assault, the superior court acted properly in not allowing Chretien to cross-examine the victim about that accusation.  This argument is based in part on the Warden's view that, unless a defendant shows that a victim's accusation of sexual assault was "demonstrably false," he has no constitutional right to ask about it on cross-examination.  Though the New Hampshire Supreme Court appears to have endorsed this view in State v. Miller, 155 N.H. 246, 250 (2007), it does not comport with the First Circuit's holding in White.  There, while the court of appeals refused to "say that New Hampshire's requirement of demonstrable falsity is always and everywhere infirm," it held that "the application of New Hampshire's general rule to the peculiar facts of [a] case" may nevertheless violate the Confrontation Clause.  399 F.3d at 26. Indeed, the White court ruled that such a violation had occurred in that case where the accusations "were false to a reasonable probability."  Id. at 27.

That is a considerably lesser standard than demonstrable falsity, and was readily met by the materials presented to the

11

superior court in this case, which included an affidavit from Hallinan that he had engaged in a consensual sex act with the victim, only to receive calls from her cell phone early the next morning making, and later recanting, the accusation that he had sexually assaulted her.  And, like the false accusations in White, the false accusation against Hallinan was "of a quite similar character" to the allegations against Chretien, "with a resulting plausible inference of a motive to deceive that could infect the present testimony of the . . . vital prosecution witness[]; and with a defendant who had virtually no other way to defend himself."  Id.  The Warden's argument also ignores the procedures available to the superior court to determine whether a defendant should be allowed to cross-examine the victim about a false accusation, including conducting a pretrial "Howard"-type hearing[6] to which the defendant may subpoena witnesses, or allowing the defendant to take the victim's deposition.  Had these or a similar procedure been employed, it is safe to say that Chretien would have been able to demonstrate his right to

---

[6] The hearing, of course, would not have been a true "Howard" hearing, as it could have been tailored to discern only a false accusation, as opposed to sexual conduct.  Even the parties' stipulation need not have addressed the details of the victim's sexual encounter with Hallinan (although it did); a stipulation as to the truth or falsity of the accusation (which could have been false as to either the conduct itself or its consensual nature) would have sufficed.

cross-examine the victim about her accusation against Hallinan at trial.

In light of the evidence established at this court's hearing under Rule 8 of the Rules of Habeas Corpus (which was available to the trial court through the procedures described supra), considered along with all the evidence previously presented, the superior court should have permitted Chretien to cross-examine the victim on her prior false accusation. See id. at 26-27. Its failure to do so amounted to an unreasonable application of clearly established Confrontation Clause doctrine. Id.

Moreover, the constitutional error that occurred was not harmless, but had a "substantial and injurious effect or influence in determining the [superior court's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also O'Neal v. McAninch, 513 U.S. 432, 435 (1995) (even "the uncertain judge should treat [a constitutional] error, not as if it were harmless, but as if it affected the verdict"). This was a case of sexual assault where Chretien raised a consent defense. As there were no witnesses to the incident, and little physical evidence to corroborate or disprove the victim's version of events, the prosecution's case was not overwhelming. Her credibility, therefore, was paramount.

> The ability to ask a witness about
> discrediting prior events--always assuming a
> good faith basis for the question--is worth a
> great deal.  Imagine if [Chretien] had been
> allowed to question the [victim] about [her]
> prior[7] accusation[], establish [its]
> similarity, and inquire into [a] supposed
> recantation[].  The jury, hearing the
> questions and listening to [the victim's]
> replies, might have gained a great deal even
> if neither side sought or was permitted to go
> further.

White, 399 F.3d at 25.  To give the finder of fact a reason to disbelieve the victim, Chretien sought to introduce testimony that she had falsely accused another man of a sexual assault in circumstances similar to those for which Chretien was convicted: a (1) semi-public encounter (2) resulting in oral sex performed by the victim (3) involving a male previously unknown to her, followed by (4) a report of sexual assault to others including her family (5) alleging that an assailant had forced her to perform a sex act by choking her and (6) the alleged perpetrator's contention that the encounter was consensual.

The Warden argues that, because the victim falsely accused Hallinan after--as opposed to before--she first made similar allegations against Chretien, the Hallinan accusation had little, if any, relevance to her credibility.  Rule 608(b), however,

---

[7] For the court's discussion of the relevance of false accusations made subsequent to the underlying offense, but prior to trial, see supra pages 14-15.

allows cross-examination on "[s]pecific instances of the conduct of a witness . . . concerning the witness's character for truthfulness or untruthfulness," without placing any restrictions based on when the specific instances occurred.  Indeed, since the rule recognizes that the purpose of such evidence is to determine whether the witness is being truthful <u>at trial</u>, the only temporal limitation would seem to be that instances too remote in time from <u>that testimony</u> (as opposed to when the witness first verbalized that account in some other setting) might be inadmissible as insufficiently "probative of truthfulness or untruthfulness."  Here, however, the victim's false accusation against Hallinan occurred just months before she testified against Chretien at trial.  The Warden has provided no authority whatsoever--no case law, statute, or rule of evidence--in support of the proposition that the false accusation against Hallinan was irrelevant to the victim's credibility merely because it happened subsequent, and not prior, to her initial accusation against Hallinan.  The trial court's refusal to allow Chretien to develop this issue through cross-examination deprived him of his "basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing."  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690-91 (1986).

As already stated to the parties at the July 8 hearing, Chretien's petition for a writ of habeas corpus is granted without prejudice to retrial.  The Clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Date:      September 23, 2008

cc:        Scott F. Gleason, Esq.
           Thomas J. Gleason, Esq.
           Brian Graf, Esq.